```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-7-14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KEITH DAVIS,

                        Plaintiff,                  13-cv-1657 (PKC)

          -against-                           MEMORANDUM
                                                         AND ORDER

CAROLYN W. COLVIN, COMMISSIONER OF
SOCIAL SECURITY,

                      Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Keith Davis seeks review of a final decision of the Commissioner of Social Security (the "Commissioner") that he is not eligible for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, because he is not disabled within the meaning of the Act. Plaintiff asserts that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence, contrary to law, and failed to make a full and fair inquiry into the facts. Specifically, plaintiff argues that the ALJ (1) failed to apply the treating physician rule properly; (2) failed to develop the record; and (3) wrongly assessed plaintiff's credibility. (Pl.'s Mem. 12, 19, 21.) Plaintiff and defendant have each moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the order denying disability benefits is reversed and the case is remanded to the Commissioner for further proceedings. Defendant's motion is denied.

I. PROCEDURAL HISTORY

On January 7, 2011, plaintiff applied to the Social Security Administration ("SSA") for DIB due to a pinched nerve, carpal tunnel syndrome in both hands, a torn shoulder ligament, and pain in the right wrist and right hand. (R. 150.) On April 14, 2011, the SSA determined that plaintiff's conditions were not severe enough to prevent him from working and denied his application (R. 95, 98.) The SSA notified plaintiff that his claim was disapproved and informed him of his right to request a hearing. (R. 95-97.)

On April 20, 2011, plaintiff timely requested a de novo hearing before an ALJ, which was held on November 10, 2011. (R. 73, 105-06.) Plaintiff appeared at the hearing and was represented by counsel. (R. 73.)

In a written decision dated November 23, 2011, the ALJ denied plaintiff's claim for benefits. (R. 52-65.) Applying the agency's sequential five-step test for determining whether an individual is disabled, the ALJ concluded that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 55.) Based on the evidentiary record, he concluded that although plaintiff had several severe impairments, including "internal derangement of the bilateral knees status post-arthroscopic surgery, internal derangement of the left shoulder post-arthroscopic surgery, and carpal tunnel syndrome in the right hand," plaintiff did "not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 57.) The ALJ further concluded that plaintiff still had the "residual functional capacity to perform the full range of sedentary work defined in 20 CFR 404.1567(a)." (R. 58.) The ALJ gave little weight to the opinions of plaintiff's treating physicians and gave significant weight to the opinion of a consultative

physician. (R. 60.) With respect to the credibility of plaintiff's allegations, the ALJ noted that "[plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 61.)

On January 11, 2012, plaintiff requested review of the ALJ's decision. (R. 8-51.) The SSA Appeals Council denied the request for review on January 25, 2013, and the ALJ's decision thus became the final decision of the Commissioner. (R. 1.)

Plaintiff filed a timely action in this Court seeking review of the Commissioner's final decision. Both parties moved for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P.

## II.  EVIDENCE BEFORE THE ALJ

At the hearing before the ALJ, plaintiff testified about his age, height, weight, education, daily activities, work history, medical treatment history, physical and psychiatric condition. (R. 75-92.) The ALJ reviewed documentary evidence including medical records from Mount Sinai Hospital of Queens (R. 205-08); progress and treatment reports from plaintiff's physicians, Drs. Thomas Scilaris, Christopher Kyriakides and other physicians affiliated with New York Orthopaedic Surgery and Rehabilitation; medical records from Saint Luke's Roosevelt Emergency Department (R. 347-354); a consultative examination report by Dr. Rahel Eyassu (R. 361-65); and a narrative report of plaintiff's medical history from treating physician, Dr. Eric Jacobson. (R. 411-416.)

a. <u>Non-Medical Evidence</u>

The plaintiff testified about his background.  He was born on February 27, 1966 and was 44 years old on the alleged disability onset date, June 22, 2010.  (R. 61.)  He is six feet tall and weighs approximately 190 pounds.  (R. 77.)  He lives alone but occasionally stays with a friend or his mother.  (R. 86.)  Plaintiff drives a car to attend doctors' appointments and has difficulty using public transportation.  (R. 77-78, 83.)

The plaintiff has at least a high school education and is able to communicate in English.  (R. 78.)  Plaintiff worked as a correction officer for more than 21 years.  (R. 78.)  Between November 2008 and June 2010, plaintiff was placed on light duty, which he described as a desk job, as a result of his injuries.  (R. 79-80.)  He stopped working in June of 2010 when his pain did not subside.  (R. 79.)

b. <u>Medical Evidence</u>

The ALJ reviewed plaintiff's medical records, including records of Dr. Scilaris, Dr. Kyriakides, Dr. Liebowitz, and Dr. Capiola, who provided the plaintiff with ongoing medical treatment.  These records included functional assessments and narrative reports written by Dr. Scilaris, Dr. Jacobson, and Dr. Kyriakides.  (R. 411-36.)  Additionally, he considered the report of a consulting evaluation conducted by Dr. Eyassu.  (R. 361-65.)

i. <u>Treating Physicians' Records</u>

On November 19, 2009, plaintiff presented to Dr. Liebowitz with left shoulder pain subsequent to an injury that occurred on November 19, 2008, where he was attacked by an inmate while on duty as a correction officer.  (R. 205-08, 225.)  On December 15, 2009, the plaintiff underwent arthroscopic surgery to his left shoulder.  (R. 226.)  On January 8, 2010, Dr.

Capiola conducted a post-operative examination of the patient and recommended physical therapy, prescribed Mobic and recommended that he return to work, performing light duty without heavy lifting.  (R. 223.)   Plaintiff returned to Dr. Capiola on February 4, 2010, and reported that the pain in his left shoulder had not subsided and that he was also experiencing pain in his right knee caused by the same November 2008 work-related accident.  (R. 221.)   On April 22, 2010, Dr. Capiola injected corticosteroid to the plaintiff's left shoulder for the pain.  (R. 219.)  On May 12, 2010, Dr. Capiola examined plaintiff who still reported having pain in his left shoulder and right knee.  (R. 218.)  Dr. Capiola determined that plaintiff had a partial tear in his right ACL.  (R. 218.)  On June 28, 2010, Dr. Liebowitz cleared plaintiff to carry a firearm.  (R. 236.)

On February 7, 2010, plaintiff fell at work, causing pain in his right hand, wrist, and left shoulder.  On February 11, 2010, Dr. Kyriakides examined plaintiff regarding the injuries resulting from the February 7 work-related accident.  (R. 262.)  Dr. Kyriakides immobilized plaintiff's right hand with a short arm cast and recommended it remain immobilized for four to six weeks.  (R. 262-63.)  On March 4, 2010, Without removing the cast, Dr. Capiola performed x-rays of plaintiff's right hand and wrist, which showed no obvious cortical disruption or obvious fracture.  (R. 247.)  On March 11, 2010, Dr. Kyriakides removed the cast of plaintiff's right hand, ordered an MRI of the right hand and left shoulder, prescribed Percocet due to the severe pain, and advised the plaintiff to avoid all strenuous physical activity.  (R. 264.)

On May 10, 2010, Dr. Capiola reviewed the MRI of plaintiff's right wrist, which was taken on April 23, 2010, and demonstrated a possible non-displaced fracture of the triquetrum.  (R. 244.)  Dr. Capiola recommended that the plaintiff engage in aggressive physical

therapy for his right wrist, left knee and left shoulder, which continued to cause plaintiff pain. (R. 244.)  Following this examination, Dr. Capiola restricted plaintiff to "no inmate contact" at work for three to six months beginning May 10, 2010.  (R. 254.)

On July 1, 2010, Dr. Kyriakides examined the plaintiff, who complained of ongoing left shoulder pain.  An MRI revealed an intrasubstance tear of the supraspinatus with lateral down sloping of the acromion (a continuation of the shoulder blade or scapula).  Based on the MRI, Dr. Kyriakides concluded that the plaintiff might require additional surgery.  (R. 267.) Dr. Kyriakides also concluded that the MRI of plaintiff's right hand and wrist revealed a bone island along the distal radius and tendinosis versus neuroma and referred him to a specialist, Dr. Scilaris.  (R. 267.)  On December 9, 2010, upon request by Dr. Capiola, Dr. Kyriakides recommended autologous platelet-rich plasma injections prior to the anticipated left shoulder surgery.  (R. 272.)

Dr. Kyriakides issued a report on May 5, 2011, and noted that cortisone injections had temporarily relieved plaintiff's shoulder pain.  (R. 431.)  He also issued a follow-up report on June 28, 2011, which stated that the plaintiff suffered continued hand dysfunction and noted that plaintiff would be prescribed Vicodin three times a day for "breakthrough pain."  (R. 435.)

On September 16, 2011, Dr. Scilaris completed a check-the-box form regarding plaintiff's residual functional capacity.  He concluded that plaintiff would be limited to standing and/or walking less than two hours in an eight hour work day and sitting less than two hours in an eight hour work day.  He also limited the plaintiff to lifting and carrying between five and ten pounds during an eight hour work day.  Dr. Scilaris based these findings on surgical pictures

from the plaintiff's December 2009 left shoulder surgery and a right knee arthroscopic surgery that took place on April 6, 2011. (R. 418-21.)

On September 19, 2011, Dr. Jacobson completed a check-the-box form regarding plaintiff's residual functional capacity. He concluded that plaintiff would be limited to standing and/or walking less than two hours in an eight hour work day and sitting less than two hours in an eight hour work day. He also limited the plaintiff to lifting and carrying between five and ten pounds during an eight hour work day. (R. 412-13.) Dr. Jacobson also submitted a narrative report concerning plaintiff's functional limitations, in which he stated that plaintiff had been under his care from November 23, 2009 until the date of his report, October 26, 2011, for injuries sustained in the November 19, 2008 work related accident and a June 26, 2009 motor vehicle accident. Dr. Jacobson also reported that he had seven prior appointments with the plaintiff between February 8, 2010 and October 26, 2011, and that he had another appointment scheduled for November 23, 2011. (R. 414-16.)

On October 6, 2011, Dr. Kyriakides completed a check-the-box form regarding plaintiff's residual functional capacity. He concluded that plaintiff would be limited to standing and/or walking less than one hour in an eight hour work day and sitting less than two hours in an eight hour work day. He also limited the plaintiff to lifting and carrying between five and ten pounds for one-third of an eight hour work day and less than five pounds for 2/3 of an eight hour work day. (R. 423-24.) Dr. Kyriakides based these findings on reports between August 2009 and June 2011. (R. 425-35.)

ii. Non-Treating Physicians' Reports

On March 22, 2011, Dr. Eyassu performed a consultative physical examination on plaintiff. Plaintiff explained to Dr. Eyassu that he experienced daily neck pain, exacerbated by sitting and standing and alleviated by sleeping. (R. 361.) He also stated that he went to physical therapy three times a week without improvement and noted that the three cortisone injections in his right knee had not improved his condition. (R. 361.) Dr. Eyassu observed that the plaintiff had a mildly antalgic abnormal gait and did not need help getting on and off the exam table or changing for the exam. (R. 362.) Dr. Eyassu recommended plaintiff seek an orthopedic evaluation of his left shoulder. (R. 364.) Dr. Eyassu concluded that "plaintiff has marked limitation for reaching up, activities such as pulling and pushing, activities such as excessive neck movements, and activities that would require lifting. He has moderate limitation on activity with repetitive squatting, kneeling, and crawling. He also has moderate limitation on prolonged sitting and standing." (R. 364.)

III. APPLICABLE LAW

a. Standard of Review

Under Rule 12(c), Fed. R. Civ. P., a movant is entitled to judgment on the pleadings only if he establishes that, based on the pleadings, he is entitled to judgment as a matter of law. Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537, 47 F.3d 14, 16 (2d Cir. 1995). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842

F.2d 639, 642 (2d Cir. 1988).

District court review of the Commissioner's final decision denying disability benefits is limited.  A court may not review the Commissioner's decision de novo.  See Cage v. Comm'r of Soc. Servs., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted).  If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied . . . the court shall review only the question of conformity with [the] regulations . . . ."); see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).  A court's review thus involves two levels of inquiry.  Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999).  First, the court must review "whether the Commissioner applied the correct legal standard," id., including adherence to applicable regulations, see Kohler, 546 F.3d at 265.  Second, the court must decide whether the Commissioner's decision is supported by substantial evidence.  Tejada, 167 F.3d at 773.

An ALJ's "[f]ailure to apply the correct legal standards is grounds for reversal." Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004) (quoting Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).  An ALJ's factual findings supported by substantial evidence are "binding" on a district court; however, "where an error of law has been made that might have affected the disposition of the case," the Court cannot simply defer to the ALJ's factual findings.  Id.

It is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant."  Carroll v. Sec'y of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983).  "[G]enuine conflicts in the medical evidence are for the Commissioner to resolve."  Burgess v. Astrue, 537 F.3d 117,

128 (2d Cir. 2008) (citation omitted).  In particular, courts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while testifying.  Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).

Before deciding whether the Commissioner's determination is supported by substantial evidence, the reviewing court must first be satisfied that the claimant received "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act."  Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (citation and quotation marks omitted).  The ALJ has an affirmative duty to fully and fairly develop an administrative record.  Echeverria, 685 F.2d at 755.  This duty arises, regardless of whether the claimant is represented by counsel, from the fact that "a hearing on disability benefits is a non-adversarial proceeding."  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel . . . .'" Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (quoting Perez, 77 F.3d at 47).  Accordingly, "the reviewing court must make a 'searching investigation' of the record to ensure that" the ALJ protected the claimant's rights.  Robinson v. Sec'y of Health and Human Servs., 733 F.2d 255, 258 (2d Cir. 1984) (citation omitted).  "If the reviewing court determines that a claimant did not receive a 'fair and adequate hearing' before the ALJ, . . . it must remand the case to the Commissioner . . . ."  Watson v. Astrue, 08-cv-1523, 2009 WL 6371622, at *5 (S.D.N.Y. Feb 4, 2009), adopted by 2010 WL 1645060 (S.D.N.Y. Apr. 22, 2010).  "A finding of gaps in the record or need for further development of the evidence is cause for remand."  Batista v. Chater,

972 F. Supp. 211, 217 (S.D.N.Y. 1997) (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).

      b. Five-Step Disability Determination

The Act defines "disability" in relevant part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act provides that "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). "Work that exists in the national economy" "means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); see also 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner's determination of a claimant's disability follows a five-step sequential analysis promulgated by the "SSA". 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has described this analysis as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in

> Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (brackets and omission in original)). The claimant bears the burden of proof for the first four steps; the burden shifts to the Commissioner at the fifth step. See Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).

"In making his determination by this process, the Commissioner must consider four factors: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam) (citation and quotation marks omitted). Further, the Commissioner "shall consider the combined effect of all the individual's impairments . . . ." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

          c.   Treating Physician Rule

Under applicable regulations, the opinion of a claimant's treating physician regarding "the nature and severity of [claimant's] impairment[s]" will be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2003) (citations omitted). In contrast, a treating physician's opinion is not afforded to

- 12 -

controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). In such a case, a report from a consultative physician may constitute substantial evidence. Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a number of factors, including, inter alia, (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see Clark, 143 F.3d at 118.

The opinion of a treating physician, or any doctor, that the claimant is "disabled" or "unable to work" is not controlling. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Medical opinions on such issues are merely a consideration and not determinative. 20 C.F.R. § 404.1527(e). Such issues are reserved to the Commissioner. Id. Reserving these issues to the Commissioner relieves the SSA of having to credit a doctor's finding regarding these issues, but that "does not exempt [the ALJ] from [his] obligation . . . to explain why a treating physician's opinions are not being credited." Snell, 177 F.3d at 134.

IV. DISCUSSION

    a. The ALJ's Decision

Applying the five-step process for evaluating disability claims, see 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999), the ALJ denied plaintiff's

benefit claim. (R. 52-65.) At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since June 22, 2010, the alleged onset date of his condition. (R. 57.) At step two, he found that plaintiff had several "severe" impairments, as defined in 20 C.F.R. § 404.1520(c), which "have more than a minimal impact on the [plaintiff's] ability to do work like activities," including internal derangement of the bilateral knees status post arthroscopic surgery, internal derangement of the left shoulder status post arthroscopic surgery, and carpal tunnel syndrome in the right hand. (R. 57.) However, the ALJ did not find that these impairments met or were medically equal to the impairments listed in Appendix 1 to Subpart P of 404 at step three of the disability determination. (R. 57-58.) At step four, he determined that plaintiff could not perform any past relevant work since the residual functional capacity required of his previous work as a correction officer exceeded his current residual functional capacity. (R. 61.) At the fifth step, the ALJ, relying on the opinion of Dr. Eyassu, concluded that plaintiff would have a moderate restriction in prolonged sitting and standing, found that the Commissioner had demonstrated that plaintiff had the residual functional capacity to sit for up to six hours in an eight-hour day, stand and/or walk up to two hours in an eight hour day, lift and carry up to ten pounds occasionally and less than ten pounds frequently. (R. 60-62.) These capacities permitted the plaintiff to perform the full range of sedentary work. (R. 62.) Therefore, the ALJ found that plaintiff was "not disabled" according to Medical-Vocational Rule 201.28. (R. 62.)

### b. Weight Afforded to Treating Physicians' Opinions

The ALJ declined to give controlling weight to the opinions of plaintiff's physicians, Dr. Jacobson, Dr. Sclaris, and Dr. Kyriakides, and instead relied on the opinion of Dr. Eyassu. The ALJ concluded that the treating physicians' opinions were inconsistent with their own clinical findings, were unsupported by the substantial medical evidence in the record,

and were based upon objective evidence that predated the claimant's alleged onset date. He also noted that Dr. Eyassu's opinion should be afforded significant weight because it was based upon clinical findings adduced directly by Dr. Eyassu and because it was most consistent with the substantial medical evidence of record. (R. 60.)

  As will be developed, the ALJ had a proper basis to conclude that the opinions of Dr. Scilaris and Dr. Kyriakides opinions were not entitled to controlling weight because they are inconsistent with other substantial evidence in the record. However, he failed to assess the weight Dr. Jacobson's opinion should be given in accordance with the factors set forth in the regulations. See Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d) (2), 416.927(d)(2)).

  In considering the clinical findings upon which Dr. Scilaris based his opinion of plaintiff's residual functional capcity, the ALJ noted that Dr. Scilaris relied upon the two surgeries plaintiff underwent in December 2008 and April 2011. The ALJ indicated that there were no records regarding the plaintiff's post-operative prognosis after his April 2011 surgery. The ALJ also appropriately considered the record submitted with Dr. Kyriakides' residual functional capacity assessment of plaintiff. The ALJ acknowledged that the medical records showed plaintiff continued to have knee and shoulder problems as recently as June 2011. Dr. Kyriakides did not indicate that there were further records upon which he based his findings. Therefore the ALJ did not improperly weigh the opinions of Dr. Scilaris or Dr. Kyriakides.

  However, the record lacks details regarding the frequency and nature of the treatment relationship between Dr. Jacobson and the plaintiff. Dr. Jacobson's narrative report reflects that they had an ongoing treatment relationship. In his decision, the ALJ noted that Dr. Jacobson had seen the plaintiff six times, although there are no records in the claims file related

to any clinical exams by Dr. Jacobson.  The record does not contain any treatment records from Dr. Jacobson and there is no indication in the record that the ALJ made any effort to contact Dr. Jacobson for additional information or details regarding the treatment relationship.  Although the ALJ may not have had an affirmative duty to obtain the actual treatment records, he had a duty to conduct a searching investigation of the record to ensure that the plaintiff received a full and adequate hearing.  See Robinson v. Sec'y of Health and Human Servs., 733 F.2d 255, 258 (2d Cir. 1984), 20 C.F.R. § 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . .")  The plaintiff's testimony did not develop evidence regarding the plaintiff's treatment relationship with Dr. Jacobson.  Because the ALJ did not have a sufficient record of the plaintiff's relationship with Dr. Jacobson, it could not properly weigh Dr. Jacobson's opinion.

        Failure to assess a treating physicians' opinion in accordance with the factors set forth in the regulations and failure to supplement deficient treating physician medical records constitutes grounds for reversal and remand.  See Schaal v. Apfel, 134 F.3d 496, 504, 505 n.9 (2d Cir. 1998) ( "[t]o the extent that the treatment notes may have been unclear, it was of course the Commissioner's responsibility to clarify the record-all the more so because the Commissioner bears the burden of proof in establishing that plaintiff had the residual functional capacity to engage in sedentary work"); Rosa, 168 F.3d at 79 ("An ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); Ellington v. Astrue, 641 F. Supp. 2d 322, 330-31 (S.D.N.Y. 2009) ("the ALJ committed legal error in not describing how much weight he did accord to [the treating physician's] opinion once he determined that it was not controlling"); Santiago v. Massanari, 00-cv-3847 (GEL), 2001 WL

1946240, at *12-13 (S.D.N.Y. July 16, 2001) (reversing and remanding case where ALJ failed to consider the factors set forth in the regulations for evaluating treating physicians' opinions and did not take affirmative steps to supplement deficient treating physician records).

Because the ALJ did not have sufficient information to determine the weight accorded to Dr. Jacobson's opinion, he committed legal error.  See Kohler, 546 F.3d at 265 (citing Schaal, 134 F.3d at 504-05) (explaining that legal error may include failure to adhere to the applicable regulations).  Because the ALJ did not apply the proper legal standard, this Court need not reach the issue of whether the Commissioner's decision is supported by substantial evidence.  See Pollard v. Halter, 377 F.3d at 189; Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.")

An ALJ has an affirmative duty to develop the record even when a claimant is represented by counsel.  However, plaintiff's counsel, who contends before this Court that the ALJ "made no attempt to develop the record by requesting these records, nor even attempt to ascertain their existence," was responsible for providing records to the ALJ on the plaintiff's behalf.  (Pl's Mem. 20).  The Court is troubled by the possibility of tactical gamesmanship in a Social Security case where counsel fails to submit records that are material but not cumulative.[1] Accordingly, the Court recommends that an ALJ faced with this circumstance in the future elicit on the record a representation from claimant's counsel that all records that are material and not

---

[1] The Court makes no conclusion that gamesmanship played any role in this case.

cumulative to a claim have been introduced. The Court need not decide the estoppel effect of such a representation.

The record indicates that the plaintiff met with Dr. Jacobson on six occasions, which is substantial despite the ALJ's conclusion that they met "only" six times. The misapplication of the treating physicians rule necessitates a remand for further findings upon a fully-developed record. It is not for this Court to reweigh the evidence in a social security case. Schaal, 134 F.3d at 504. "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, [courts] have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence." Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).

V. CONCLUSION

Because the ALJ failed to apply the correct legal standard in deciding the appropriate weight to afford treating physicians and failed to develop the record, this case is remanded to the Commissioner for further development of the evidence and reconsideration in light thereof. The Court expresses no view on how the matter should be determined on remand. Defendant's motion for judgment on the pleadings and plaintiff's cross-motion for judgment on the pleadings are DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
August 7, 2014